```
         IN THE UNITED STATES DISTRICT COURT FOR
         THE DISTRICT OF MARYLAND, NORTHERN DIVISION
                              *
BREN JACOBSON,
                              *
     Plaintiff,
                              *
v.                                    CIVIL NO.: WDQ-06-1629
                              *
ALLSTATE INSURANCE COMPANY,
                              *
     Defendants.
                              *

*    *    *    *    *    *    *    *    *    *    *    *    *
```

MEMORANDUM OPINION

Bren Jacobson has sued Allstate Insurance Company ("Allstate") over Allstate's failure to settle loss claims for storm damage to his home. Pending is Allstate's motion to dismiss Counts 1 through 3 of the Complaint. For the following reasons, the motion will be granted.

I. Background

On September 18, 2003, Hurricane Isabel hit the east coast of the United States and allegedly heavily damaged the home of Jacobson, a resident of Anne Arundel County, Maryland. Compl. ¶ 9. Jacobson alleges that he timely filed a loss claim with Allstate for the damage done to his home by wind and rain from the storm, but that, to date, Allstate has paid him only a small fraction of the benefits due under his policy. Compl. ¶¶ 12-13. During his attempts to settle his claim, Jacobson alleges that

1

Allstate engaged in a "systematic pattern of low-ball, high-pressure tactics," further described in the Complaint, which he alleges have been part of Allstate's *modus operandi* since 1993. Compl. ¶¶ 17-18, 20.

As a result, Mr. Jacobson alleges he has been unable to repair his damaged home or build a new home, has had to live in a damaged home contaminated by mold and other toxins, and now suffers from, *inter alia*, deteriorating health and lost earning capacity.  Compl. ¶¶ 14-15.  Jacobson sued Allstate in the Circuit Court for Anne Arundel County, Maryland, on June 2, 2006, and the case was removed to this Court on June 7, 2006.

Jacobson's Complaint includes the following counts: (1) insurance procurement fraud—deceit; (2) claim adjustment fraud—deceit; (3) intentional infliction of emotional distress; (4) malicious destruction of property; and (5) breach of contract.  Allstate has moved to dismiss Counts 1 through 3 for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure ("Rule") 12(b)(6).

II.  Discussion
A.  Standard of Review

Under Rule 12(b)(6), a motion to dismiss should be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the

allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002), (*citing Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)); *Mylan Laboratories, Inc. v. Raj Matkari, et al.*, 7 F.3d 1130, 1134 (4th Cir. 1993).  All allegations are treated as true, and the complaint is viewed in the light most favorable to the plaintiff.  *Mylan*, 7 F.3d at 1134.

In deciding a Rule 12(b)(6) motion, the Court will consider the facts stated in the complaint and any attached documents. *Biospherics, Inc., v. Forbes, Inc.*, 989 F. Supp. 748, 749 (D. Md. 1997), *aff'd*, 151 F.3d 180 (4th Cir. 1998)). The Court may also consider documents referred to in the complaint and relied upon by the plaintiff in bringing the action.  *Id*.

B.  Analysis

1.  Count 1: Insurance Procurement Fraud—Deceit

Allstate argues that Jacobson's claims all arise from a "quintessential disagreement over the application and enforcement of a homeowner's policy."  Def.'s Mem. in Supp. of its Mot. to Dismiss 1 ("Def.'s Mem.") (internal quotation marks omitted). Consequently, Jacobson's tort claims in Counts 1 through 3 of the Complaint should be dismissed, as it is well-settled in Maryland that "'[a]n insured may not bring a bad faith claim against an insurer for refusal to perform under a contract.'" *Id.* (*quoting Snyder v. Chester County Mut. Ins. Co.*, 264 F. Supp. 2d 332, 340

(D. Md. 2003) (Quarles, J.)).  Jacobson counters that the fraud in the procurement of an insurance policy is committed before the policy exists, and so arises independently from the contractual relationship.

Under Maryland law, the duty owed by an insurer to provide coverage under a policy is entirely contractual; the only actions an insured may bring against an insurer denying coverage are for declaratory judgment on the coverage of the policy and breach of contract.  *Hartz v. Liberty Mut. Ins. Co.*, 269 F.3d 474, 476 (4th Cir. 2001); *Jones v. Hyatt Ins. Agency, Inc.*, 356 Md. 639, 655 (1999).  Accordingly, "Maryland does not recognize a specific tort action against an insurer for bad faith failure to pay an insurance claim."  *Johnson v. Fed. Kemper Ins. Co.*, 74 Md. App. 243, 248 (Md. Ct. Spec. App. (1988); *see also Hartz*, 269 F.3d at 476.

Maryland courts have only applied this rule to tort claims based on insurance claim disputes—they have not invoked it to dismiss an action alleging tort liability independent of the insurer's contractual duty under an existing policy.  In *Jones*, the Court of Appeals states that the law applies to "an insurer which mistakenly denies coverage."  *Jones*, 356 Md. at 655-56.  In *Johnson*, the Court of Special Appeals denied tort liability specifically for "bad-faith failure to pay an insurance claim."  *Johnson*, 74 Md. App. at 249.  Federal courts applying Maryland

4

law have followed the limited application of this rule.  *See, e.g.*, *Hartz*, 269 F.3d at 476 (affirming dismissal of tort action for damages from insurer's delay in settling claim); *Snyder*, 264 F. Supp. 2d at 340 (dismissing tort claims because insured did not identify any legal duties applicable to insurer independent of the policy).

Jacobson argues that Count 1 is an action for "promissory fraud" that induced him to procure and subsequently renew the insurance policy.  Pl.'s Resp. 4.  Maryland recognizes an action for fraud involving a "deliberate misrepresentation of . . . existing intentions, where the misrepresentation was material to the transaction giving rise to the alleged fraud."  *Alleco, Inc. v. Harry & Jeanette Weinberg Found.*, 340 Md. 176, 197 (1995).  According to Maryland's Court of Appeals:

> The gist of the fraud in such cases is *not the failure to perform the agreement*, but the fraudulent intent of the promisor, the false representation of an existing intention to perform where such intent is in fact non-existent, and the deception of the promisee by such false promise.

*Tufts v. Poore*, 219 Md. 1, 12 (1959) (emphasis added).  Jacobson alleges that Allstate falsely represented that "in the event of a property loss to his residence, benefits would be paid to him in accordance with the terms of the policy," with either knowledge or reckless indifference to its present intent not to perform under the policy.  Compl. ¶ 25.

Under Maryland law, a party who discovers he has been

fraudulently induced into a contract may either: (1) unilaterally rescind the contract and recover his expenditures; or (2) ratify the contract and collect damages for its breach; he can not do both. *Sonneberg v. Sec. Mgmt. Corp.*, 325 Md. 117, 124 (1992); *Merritt v. Craig*, 130 Md. App. 350, 365 (Md. Ct. Spec. App. 2000). The law will not relieve a party "of all obligations under a contract while simultaneously securing a windfall of compensatory and punitive damages beyond incidental expenses." *Merritt v. Craig*, 130 Md. App. at 366. In Count 1 Jacobson demands compensatory and punitive damages "for non-payment of insurance benefits," and so elects to ratify and not rescind the policy. Compl. ¶ 19. Jacobson has thus chosen to hold Allstate to its alleged false promises by retaining the policy and enforcing his contract right to damages for Allstate's failure to perform. His "insurance procurement fraud" claim, as pled, is then no more than "a bad faith claim against an insured for refusal to perform under a contract" and must be dismissed. *Snyder*, 264 F. Supp. 2d at 340.

2. Count 2: Claim Adjustment Fraud—Deceit

Jacobson's Count 2 alleges that he has been "defrauded by Allstate in the adjustment of his loss claim." Compl. ¶ 36. But the "duty which is owed to an insured for failure to settle a claim sounds in contract and not in tort." *Hartz*, 269 F.3d at

6

476.  Jacobson argues that the fraud allegation of Count 1, and the malicious-destruction-of-property claim of Count 4, supply bases of tort liability independent of the contractual obligations under the policy, and so Count 2 should stand.  But as the fraud claim is based solely on Allstate's contractual duties, Count 2 must be dismissed.

3.  Count 3: Intentional Infliction of Emotional Distress

The tort of intentional infliction of emotional distress requires four elements: (1) extreme and outrageous conduct; (2) that the conduct be intentional or reckless; (3) severe emotional distress; and (4) a causal connection between the conduct and the distress.  *Manikhi v. Mass Transit Admin*., 360 Md. 333, 367 (2000)*; Harris v. Jones*, 281 Md. 560, 566 (1977).  Each element of the tort must be pled and proved with specificity.  *Manikhi,* 360 Md. at 367.  The conduct in question must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Harris*, 218 Md. at 567 (internal quotation marks omitted).  The Court determines first whether the alleged conduct may reasonably be found extreme and outrageous.  *Harris*, 218 Md. at 569.

Count 3 alleges that "Allstate's conduct in carrying out its *low-balling, high pressure tactics as described in this Complaint*

7

comprised and continues to comprise extreme and outrageous conduct . . ." Compl. ¶ 37 (emphasis added).  Allstate argues that this is just another bad faith claim based on Allstate's alleged failure to perform under the policy, and should be dismissed with Counts 1 and 2.  Jacobson counters that the alleged "low-balling, high pressure tactics" as described in the Complaint include the malicious destruction of property averred in Count 4, which Allstate has not moved to dismiss.  If one overlooks the technical matter that Count 3 does not incorporate the allegations in Count 4, one finds that Count 4 contains no allegations of malicious acts, aside from those incorporated by reference to the preceding paragraphs.  The extreme and outrageous conduct averred must then come from the "low-balling, high pressure tactics" Jacobson incorporates by reference in Count 3.

   The majority of the "low-balling, high pressure tactics" Jacobson describes are directly related to his contractual dispute with Allstate over his insurance claims.  Compl. ¶ 18(a)-(o).  But Jacobson does list one instance in which he alleges an Allstate claim adjuster removed a tarp covering a hole in the roof of an outbuilding and did not replace it, which caused further destruction to the building's contents.  Compl. ¶ 18(p).  Although, if true, that conduct could be construed as a tort independent of the policy dispute, it is hardly "beyond all

8

possible bounds of decency," and does not cross the very high threshold set by Maryland for extreme and outrageous conduct. *Harris*, 218 Md. at 567, *see also Baltimore-Clark v. Kinko's, Inc.*, 270 F. Supp 2d 695, 701 (2003) (dismissing intentional infliction of emotional distress claim for failure to plead extreme and outrageous conduct).  As Jacobson has failed to state a claim for intentional infliction of emotional distress, Count 3 will be dismissed.

III.  Conclusion

    For the reasons stated above, Allstate's motion to dismiss Counts 1 through 3 will be granted.


<u>October 23, 2006</u>                              <u>        /s/             </u>
Date                                     William D. Quarles, Jr.
                                         United States District Judge